**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**LORENZO DANTE NICHOLS,**

          **Plaintiff,**

          **v.**                              **Case No. 10-C-106**

**JOHN HUSZ, et al.,**

          **Defendants.**

---

**DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

**I. PROCEDURAL HISTORY**

The pro se plaintiff, Lorenzo Dante Nichols, is proceeding in forma pauperis under 42 U.S.C. § 1983, on a claim that the defendants denied him the opportunity to appropriately practice his religion, Islam, while incarcerated at the Milwaukee Secure Detention Facility ("MSDF") from October 16, 2009 through March 15, 2010. On June 2, 2011, the defendants responded to the plaintiff's amended complaint with a motion for summary judgment, arguing that the plaintiff failed to exhaust all administrative remedies available to him prior to filing this lawsuit. (Docket No. 30.) The plaintiff was granted an extension of time to respond to the summary judgment motion on June 8, 2011 and again on July 22, 2011, after a family emergency arose in Texas. (Docket Nos. 36, 40.) The plaintiff was ordered to file a response to the defendants' motion for summary judgment on or before August 19, 2011 and was told that no further extensions would be granted. However, due to a misunderstanding regarding the plaintiff's permanent address, he did not receive notification that his second motion for extension was granted until September 22, 2011, when he contacted the court

to inquire about the status of his case. Due to the circumstances regarding the misunderstanding, the court provided the plaintiff one final extension to respond to the defendants' motion for summary judgment. (Docket No. 43.) The plaintiff filed his response to the defendants' motion for summary judgment on October 7, 2011, (Docket No. 44), and the defendants replied on October 13, 2011 (Docket No. 45). Both parties have consented to U.S. magistrate judge jurisdiction in accordance with 28 U.S.C. § 646(c) and Rule 73(b) of the Federal Rules of Civil Procedure. (Docket Nos. 5, 26.)

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "To successfully oppose the motion, the nonmovant must present definite, competent evidence in rebuttal." Salvadori v. Franklin Sch. Dist., 293 F.3d 989, 996 (7th Cir. 2002). District courts are not required to search the record for evidence sufficient to defeat a motion for summary judgment. See Ruffin-Thompkins v. Experian Info. Solutions, Inc., 422 F.3d 603, 609-10 (7th Cir. 2005); Doe v. Cunningham, 30 F.3d 879, 885 (7th Cir. 1994).

## III. FACTS

Pursuant to Civ. L. R. 56 (b)(2)(b) and (b)(4), the following facts are uncontested and deemed admitted for purposes of deciding summary judgment by virtue of the plaintiff failing to respond to the defendants' proposed findings of fact. (Docket No. 32.)

The plaintiff filed his first offender complaint, MSDF-2010-1692, on January 20, 2010, alleging that the defendants denied him the opportunity to hold Jummah on Fridays, an act that is obligatory to those practicing Islam. (Docket No. 32 at ¶10.) On January 24, 2010, the Inmate Complaint Examiner ("ICE") recommended to the proper reviewing authority that this complaint be dismissed. (Docket No. 32 at ¶11.) Included in the recommendation was a statement from the institution's chaplain, noting that when environmental conditions are not conducive to performing Jummah, Muslims are obligated to offer individual prayer. (Docket No. 33-1 at 3.) Warden John Husz, acting as the proper reviewing authority under Wis. Admin Code § DOC 310.12(2), dismissed the complaint on January 25, 2010. (Docket No. 32 at ¶12.) A copy of the dismissal, as well as the appeal process, was sent to the plaintiff. (Docket No. 32 at ¶13.) In particular, the plaintiff was advised that "[a] complainant dissatisfied with a decision may, within 10 calendar days after the date of the decision, appeal that decision by filing a written request for review with the Corrections Complaint Examiner." (Docket No. 32 at ¶13.) The plaintiff did not appeal the dismissed complaint to the Corrections Complaint Examiner ("CCE") as allowed by Wis. Admin Code § DOC 310.13(1). (Docket No. 32 at ¶14.)

On March 8, 2010, the plaintiff filed his second offender complaint, MSDF-2010-5214, further complaining about the religious practices at MSDF. (Docket No. 32 at ¶15.) Later that day, the ICE rejected the plaintiff's complaint on the grounds that the issue had been previously addressed. (Docket No. 32 at ¶16.) The plaintiff was given a copy of the rejection, which also contained the proper appeal process, on March 9, 2010. (Docket No. 32 at ¶¶17, 18.) Specifically, the plaintiff was advised that he "may appeal the rejection of this complaint within 10 calendar days to the appropriate reviewing authority." (Docket No. 32 at ¶18.) The plaintiff did not appeal the rejected complaint to the appropriate reviewing authority as allowed by Wis. Admin Code § DOC 310.11. (Docket No. 32 at ¶19.)

## IV. ANALYSIS

In support of summary judgment, the defendants contend that the plaintiff did not properly exhaust all of his administrative remedies prior to filing suit as required by the Prison Litigation Reform Act of 1995 ("PLRA"). The defendants further submit, citing Wis. Admin Code § DOC 310.05, that Wisconsin inmates are prohibited from commencing any civil action against an employee of the Department of Corrections ("DOC") without first exhausting all administrative remedies.

In response, the plaintiff focuses solely on language from the Religious Land Use and Institutionalized Persons Act (RLUIPA). He argues that MSDF is subject to the regulations outlined in RLUIPA because RLUIPA encompasses any entity that receives federal funding. Additionally, he claims that any entity subject to RLUIPA can be held accountable in the court system.

In reply, the defendants assert that nothing in RLUIPA amends or repeals the requirements of the PLRA. They further emphasize their original position that the PLRA requires exhaustion of all available administrative remedies prior to the filing of suit.

### A. Applicable Law

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321, states that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The phrase "with respect to prison conditions" was defined by Congress in another section of the PLRA, 18 U.S.C. § 3626(g)(2). Section 3626(g)(2) provides that

> the term "civil action with respect to prison conditions" means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

18 U.S.C. § 3626(g)(2). Due to the substantial relation between the two provisions in the PLRA, common rules of statutory construction indicate that "identical words used in different parts of the same act are intended to have the same meaning." See Sullivan v. Stroop, 496 U.S. 478, 484 (1990). "Because [section 1997e(a) and section 3626(g)(2)] are directed toward similar ends and are thus substantially related, it follows from the canon of interpretation invoked in Stroop that the identical terms used in the two sections should be read as conveying the same meaning." Booth v. Churner, 206 F.3d 289, 294 (3rd Cir. 2000), aff'd, 121 S. Ct. 1819 (2001). The term "conditions of confinement" relates to "the environment in which prisoners live, the physical conditions of that environment, and the nature of the services provided therein." Id; see also Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[Prison conditions] apply to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.")

As required by § 1997e, proper exhaustion of all available administrative remedies is a condition precedent to suit. Dixon v. Page, 291 F.3d 485, 488 (7th Cir. 2002). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). By requiring inmates to first exhaust administrative requirements, prison officials are allowed the opportunity to respond to the complaints internally before the filing of a lawsuit. Porter v. Nussle, 534 U.S. at 525. One of the main goals of the PLRA is to reduce the number of inmate lawsuits, and at the centerpiece of that goal is the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 84 (2006). There is also no question that Congress has mandated exhaustion regardless of the relief offered through the available administrative procedures. Booth v. Churner, 121 S.Ct. 1819, 1825 (2001). Additionally, it is irrelevant that an inmate believes the relief offered will be futile. Id.

Finally, a prisoner's failure to exhaust the available remedies is an affirmative defense, with the defendants bearing the burden of proof. Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).

The Wisconsin Administrative Code states that an inmate shall exhaust all administrative remedies that the DOC has promulgated by rule prior to commencing a civil action. Wis. Admin. Code § DOC 310.05. The inmate complaint review system ("ICRS") is the vehicle through which an inmate may raise significant issues regarding their institutional environment, living conditions, and civil rights. Wis. Admin. Code § DOC 310.08(1). An inmate shall file a complaint with the ICE within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.09(6). The ICE may then either forward a recommendation to the "proper reviewing authority" or wholly reject the complaint. Wis. Admin. Code § DOC 310.11(11). If the complaint is forwarded to the "proper reviewing authority" but later dismissed, the inmate may file an appeal to the CCE within 10 days of the dismissal. Wis. Admin. Code § DOC 310.13(1). The CCE will then make a recommendation to the "secretary" of the DOC who will make a final decision on the complaint. Wis. Admin. Code § 310.14(1). However, if the ICE were to reject the complaint altogether, the inmate may only appeal the rejection to the "proper reviewing authority" within 10 days of the rejection. Wis. Admin. Code § DOC 310.11(6).

The Religious Land Use and Institutionalized Persons Act, Pub. L. No. 106-274, states that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). This section is intended to apply in any case where the substantial burden is imposed in a program that receives federal financial assistance. 42 U.S.C. § 2000cc-1(b). Additionally, "[n]othing in this chapter shall be construed to amend or repeal the Prison Litigation Reform Act of 1995 (including provisions of law amended by that Act)." 42 U.S.C § 2000cc-2(e).

6

The United States Supreme Court echoed § 2000cc-2(e) in Cutter v. Wilkinson, 544 U.S. 709, 723 (2005), stating that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies." Id. at n.12.

**B. Practice of Religion as a Prison Condition**

For the PLRA to apply to this case, the plaintiff's religious complaints must be considered a "prison condition" as defined in the Act. The plaintiff's claims against the defendants arise out of their denying the plaintiff the opportunity to properly practice his religion. The plaintiff cites numerous examples, including the following: defendants' refusal to allow him to hold Jummah; the defendants' refusal to give him an extra towel for prayer; that prison cells are improper for prayer because they contain a toilet; and that the plaintiff was forced to pray on the dirty floor of his cell. (Docket No. 13 at 6). These claims are indicative of the environmental conditions at MSDF. See Booth v. Churner, 206 F.3d at 295 (stating that prison conditions as defined under [the PLRA] relate to the environment where prisoners live, the physical conditions of the environment, and the nature of services provided therein). The cleanliness and physical facilities in the plaintiff's cell describe his living environment, and his claims regarding the failure of MSDF to provide adequate religious amenities describe the nature of the services offered by MSDF. Therefore, the practice of one's religion must be included in the definition of "prison conditions" as defined by the PLRA.

**C. Failure to Exhaust**

Because RLUIPA does not amend or repeal any provisions in the PLRA, the sole issue at hand is whether the plaintiff exhausted all of the available administrative remedies prior to filing this suit. See Cutter v. Wilkinson, 544 U.S. at 723; Dixon v. Page, 291 F.3d at 488. In this case, the plaintiff has failed to exhaust all of the administrative remedies available to him. His first complaint, MSDF-2010-1692, was filed with the ICRS on January 20, 2010. Within the twenty-day response requirement outlined in the statute, his complaint was dismissed. See Lewis v.

7

Washington, F.3d 829, 833 (7th Cir. 2002) (explaining that prison officials cannot exploit the exhaustion requirement by not responding to grievances). In the dismissal letter from the ICE, the plaintiff was properly given notice of his right to appeal the decision and the procedure to file such an appeal. See Dole v. Chandler, 438 F.3d at 813 (failing to provide the prisoner with instructions on how to proceed beyond filing a grievance exhausts available administrative remedies); see also Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (preventing the prisoner from accessing grievance and appeal forms results in exhaustion of available administrative remedies); Vasquez v. Hilbert, 2008 U.S. Dist. LEXIS 42011 * 11 (W.D. Wis. May 28, 2008) ("The burden is on the Department of Corrections to make grievance procedures clear and easy to follow"). The dismissal letter received by the plaintiff clearly states: "A complainant dissatisfied with a decision may, within 10 calendar days after the date of the decision, appeal that decision by filing a written request for review with the Corrections Complaint Examiner on form DOC-405 (DOC 310.13, Wis. Adm. Code)." (Docket No. 32 at ¶13.)

If the inmate chooses to appeal an unfavorable decision, the appeal is filed with the CCE, who provides a recommendation to the DOC Secretary. Wis. Admin. Code §§ DOC 310.13(1) and 310.14. Only after the Secretary makes his decision are the administrative remedies exhausted. Based on defendants' exhibit 1000, (Docket No. 33-1 at 6), which includes the entire ICRS report for the plaintiff's complaint MSDF-2010-1692, the plaintiff did not appeal the dismissed complaint.

The plaintiff filed his second complaint, MSDF-2010-5214, on March 8, 2010. The ICE rejected this complaint later that day because the issue had already been addressed through the plaintiff's previous complaint, MSDF-2010-1692. See Wis. Admin. Code §§ DOC 310.11(11) and 310.11(5)(g). In the rejection letter, the plaintiff was given notice of his right to appeal the rejected complaint and the procedure to file an appeal. The rejection letter states in part:

> Per DOC 310.11(6), you may appeal the rejection of this complaint within 10 calendar days to the appropriate reviewing authority. The reviewing authority will only review the basis

8

> for the rejection of this complaint, not the merits of the complaint. . . . The reviewing authority's decision is final . . . .

Docket No. 32 at ¶ 18. The reviewing authority's decision on the appeal would exhaust the administrative remedies available to the inmate. Based on defendants' exhibit 1001, (Docket No. 33-2 at 5), which includes the entire ICRS report for the plaintiff's complaint MSDF-2010-5214, the plaintiff did not appeal the rejected complaint.

Defendants' exhibit 1002, (Docket No. 33-3), further details every complaint the plaintiff has filed while incarcerated with the Wisconsin DOC. See Wis. Admin. Code § DOC 310.17. The plaintiff's Inmate Complaint History Report ("Report") shows that he has filed a total of twenty inmate grievances from July 9, 2001 to April 7, 2011, with the majority of the complaints filed in 2010. (Docket No. 33-3.) The Report further shows that the plaintiff appealed an unfavorable complaint decision to the CCE office in December 2006 while incarcerated at Oshkosh Correctional Institution (OSCI). (Docket No. 33-3.) Based on this Report, it is apparent that the plaintiff is familiar with the ICRS process, including the filing of appeals.

The plaintiff has not produced any evidence that indicates differing procedures for filing and appealing complaints at different DOC institutions. The DOC intends that the procedures for an inmate to file a complaint and any subsequent appeals are to apply across the board to all inmates incarcerated at all DOC institutions. Wis. Admin. Code § DOC 310.02. The plaintiff filed a total of twenty complaints and one appeal while incarcerated at six different state institutions over a ten year period and this court is not aware of any confusion regarding the ICRS procedures. Further, there is no indication that the plaintiff was not aware of his right to file an appeal on his dismissed and rejected complaints because the appeal procedures were clearly outlined in the dismissal letter of complaint MSDF-2010-1692 and the rejection letter of complaint MSDF-2010-5214. Therefore, it must follow that the defendants have met their burden of showing that the plaintiff has failed to

exhaust all available administrative remedies regarding inmate complaints MSDF-2010-1692 and MSDF-2010-5214 prior to filing suit. See Dole v. Chandler, 438 F.3d at 809.

## V. CONCLUSION

All of the evidence offered by the parties point to the fact that the plaintiff has failed to exhaust the available administrative remedies. The plaintiff has neither shown that MSDF failed to provide him with instructions on how to appeal an unfavorable decision, nor has he shown that MSDF prevented his access to the proper appeal forms. While the crux of the plaintiff's argument focuses on the language of RLUIPA, RLUIPA does not change the requirement of the PLRA, which plainly states that all administrative remedies must be exhausted prior to filing suit. Because the plaintiff failed to exhaust all available administrative remedies prior to filing this lawsuit, the defendants' motion for summary judgment (Docket No. 30) must be granted and this matter must be dismissed without prejudice. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004) ("[A]*ll* dismissals under § 1997(e)(a) should be without prejudice.") (emphasis in original).

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment due to the plaintiff's failure to exhaust available administrative remedies (Docket No. 30) is **GRANTED;**

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice, pursuant to 42 U.S.C. § 1997(e)(a).

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 21st day of November, 2011.

AARON E. GOODSTEIN
U.S. Magistrate Judge